# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2857

_____

United States of America

*Plaintiff - Appellee*

v.

Levi Farren Miller

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: May 14, 2021
Filed: September 3, 2021

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

Levi Farren Miller entered a conditional guilty plea to possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He now appeals, arguing

that the district court[1] made three reversible errors. First, Miller asserts that the district court erroneously denied his motion to suppress. Second, he argues that the National Firearms Act is unconstitutional. Third, he challenges the court's application of several sentencing enhancements. We affirm.

## I. *Background*
### A. *Underlying Facts*

Miller possessed a short-barreled shotgun in a house in Waterloo, Iowa. The house consisted of two stories with each floor leased as apartments. Both floors had outside access. One evening, Miller's downstairs neighbor Takeela Latham called law enforcement about an incident with Miller involving a firearm. According to Latham, Miller had placed a suitcase on her back porch. Latham did not want the suitcase there and had her friend Jarrell Cole ("Jarrell") help her move it to Miller's truck. Miller then came down a set of outside stairs and walked towards the back of the house where vehicles were parked. Latham alleged that Miller carried a shotgun and yelled profanities. Latham also claimed that Miller had pointed the shotgun at her and Jarrell.

Waterloo Police Officer Alexander Bovy responded to the call. But when he arrived at the residence, he did not see anyone. A second officer arrived at the residence soon afterwards. The officers then knocked on the back door of the residence. Latham's minor daughter opened the door. She told the officers that her mother had left the residence with some friends to get food. The girl's aunt was also inside the residence. When Officer Bovy asked if the aunt had heard people yelling, the aunt claimed she had not heard anything.

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

Appellate Case: 20-2857    Page: 2    Date Filed: 09/03/2021 Entry ID: 5072806

Next, the officers knocked on a neighbor's door. Emmitt Johnson answered and "initially denied knowledge of an altercation, stating he had only recently arrived at his residence." *United States v. Miller* (*Miller II*), No. 6:19-cr-02031-LTS-MAR-1, 2019 WL 7212306, at *2 (N.D. Iowa Dec. 27, 2019). But Johnson eventually explained that he had heard Miller arguing with his wife, Sarabeth Miller ("Sarabeth"), though he had not seen anyone else outside.

The officers made contact with Miller after knocking on his apartment door. Sarabeth and Michele Randall resided in the apartment with Miller. All three told the officers that they went outside in response to a loud noise in the back. Miller and Sarabeth said that Miller carried a large knife when they went downstairs. They also said that they observed Latham arguing with someone. They denied that there was a firearm in the house. Based on his concern regarding the presence of a firearm, Officer Bovy asked Miller if he could search his residence. Miller denied the request. The officers' supervisor instructed them to obtain a search warrant for the suspected firearm.

Before the officers obtained a search warrant, they conducted a non-consensual protective sweep of the residence. Officer Bovy took Sarabeth to the Waterloo Police Department to give a statement. Officer Steven Thomas interviewed the other witnesses—Latham, Jarrell, Chelsea Cole ("Chelsea"), and Kayla Borntreger—also at the police station. With the exception of Sarabeth, these witnesses all recalled Miller holding a shotgun with a brown stock outside his residence while repeating profanities. Throughout her interview, Latham alleged that Miller had pointed the shotgun at her and Jarrell. During his interview, Jarrell stated that Miller held the "shotgun in a position of readiness to fire" and "'pointed' the shotgun[,] but [Jarrell] did not state whether [Miller] pointed the shotgun at any individual." *Id.* at *4. Notably, Borntreger stated that Miller did not point the weapon at anyone. She did, however, indicate that Miller "[w]as carrying the shotgun in a manner that would allow him to shoot quickly if necessary." *Id.* at *5.

-3-

After all of the witnesses provided statements, Officer Bovy, consulting with Officer Thomas, drafted an application for a warrant to search Miller's residence for the shotgun that Miller allegedly used to assault Latham. After obtaining the warrant, the officers conducted a search and discovered "a pump action shotgun with a black barrel and brown wood stock and foregrip propped against the door frame inside the kitchen. A T-shirt was covering part of the barrel, and the butt of the gun was in a pan filled with cat food." *Id.* at *6 (citation omitted). The shotgun's barrel was 17 7/8ths inches long. Law enforcement arrested Miller.

## B. *Procedural History*

When presented with these facts, a grand jury indicted Miller with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a National Firearms Act short-barreled shotgun not registered to possessor, in violation of 26 U.S.C. § 5861(d).

Miller filed several motions, including a motion to suppress, a request for a *Franks*[2] hearing, a motion to dismiss both counts of the indictment, and a second motion to dismiss. The magistrate judge held a single evidentiary hearing on the motions on October 7, 2019. Although the magistrate judge was "somewhat on the fence about [Miller's] entitlement to [a *Franks*] hearing," he decided to "take up all the evidence" in the interest of "judicial economy." Mot. Hr'g Tr. at 2, *United States v. Miller*, No. 6:19-cr-02031-LTS-MAR-1 (N.D. Iowa 2020), ECF No. 63. He asked if either party had any issue with proceeding in that manner. Miller did not object.

After receiving the parties' post-hearing briefs, the magistrate judge issued a report and recommendation (R&R) recommending that the district court deny all of Miller's motions. The district court adopted the R&R and denied all of Miller's motions based on the following rationales.

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

Appellate Case: 20-2857     Page: 4     Date Filed: 09/03/2021 Entry ID: 5072806

1. Franks *Issues*

In its R&R, the magistrate judge concluded that Miller "failed to satisfy his burden to show he was entitled to a *Franks* hearing." *United States v. Miller* (*Miller I*), No. 6:19-cr-02031-LTS-MAR-1, 2019 WL 8112464, at *13 (N.D. Iowa Nov. 15, 2019). It also explained that Miller "incorrectly interpreted" his decision to "take up all the evidence at the October hearing" to mean that Miller satisfied the burden of showing that he was entitled to a *Franks* hearing. *Id.* at *7. In its order, the district court explained that "any procedural error" in holding a *Franks* hearing, without first determining whether Miller was entitled to it, was harmless, and Miller was not entitled to *Franks* relief. *Miller II*, 2019 WL 7212306, at *10.

Miller made two relevant *Franks* arguments. First, Miller argued that Officer Bovy intentionally or recklessly omitted Borntreger's statement that Miller "did not point the shotgun at anyone because [Miller] could not see her or the other witnesses, as they all watched [Miller] from inside . . . Latham's porch." *Id.* at *5. According to Miller, Borntreger's statements were material to the probable-cause analysis, as they contradicted Latham's accusation that Miller pointed a gun at her.

According to the court, "[t]he record [did] not show [that] Officer Bovy must have entertained serious doubts as to the truthfulness of the affidavit or had obvious reasons to doubt the accuracy of the information he reported" when "multiple witnesses stat[ed] [Miller] was angry and cursing while carrying a shotgun." *Miller I*, 2019 WL 8112464, at *10. Moreover, "Borntreger may not have seen [Miller] 'point' the shotgun, but what she saw was at least consistent with displaying a firearm in a threatening manner," which is also criminalized under Iowa law. *Id.* (citing Iowa Code § 708.1(2)(c)).

The court also concluded that the "omission of . . . Borntreger's statement . . . was not clearly critical to the issuing judge's finding of probable cause. Even if Officer Bovy had included her statement, the issuing judge would still have had testimony from

Appellate Case: 20-2857     Page: 5     Date Filed: 09/03/2021 Entry ID: 5072806

multiple eyewitnesses that [Miller] was angry and cursing while carrying a shotgun." *Id.* at *12. And "[e]ven if . . . Borntreger did not see [Miller] point the shotgun [at Latham and Jarrell], Officer Thomas could reasonably conclude her statement supported the assertion that [Miller] carried the shotgun in a threatening manner." *Id.*

Second, Miller "argue[d] that Officer Bovy acted with reckless disregard for the truth when he omitted Officer Bovy's encounters with [Latham's daughter], the [daughter's] aunt, and . . . Johnson." *Id.* at *10. Again, the court concluded that "nothing in the record indicate[d] Officer Bovy must have entertained serious doubts about the truthfulness of his statements or had any obvious reasons to doubt the accuracy of the information he wrote in the affidavit." *Id.* It reasoned, "Although the aunt denied having heard people yelling and . . . Johnson was hesitant to acknowledge he was aware of a verbal altercation near his residence, these events were not obvious reasons for Officer Bovy to doubt the accuracy of the information he put in his application" because "Officer Bovy testified that, in his experience, he sometimes has difficulty persuading witnesses to provide him information." *Id.* at *11.

These alleged omissions were also not clearly critical to the issuing judge's finding of probable cause because "[n]one of the omissions ha[d] any bearing on the witnesses' consistent statements that Miller came to the back of the house in response to Latham and [Jarrell] moving the bag to his truck, [while] holding a shotgun in a threatening manner and repeatedly saying 'mother***ers.'" *Miller II*, 2019 WL 7212306, at *13.

Thus, the court refused to grant Miller's motion to suppress under *Franks*.

### 2. *Warrantless Entry*

Next, Miller asked the district court to suppress the shotgun because the police entered his residence without a warrant. The district court denied the request. First, it found that exigent circumstances justified law enforcement's entry into Miller's

-6-

residence. It concluded that the exigent circumstances justifying entry were (1) officer safety and (2) destruction of evidence. But the court also explained that even if the entry was unlawful, the inevitable discovery doctrine prevented suppression of the shotgun. It noted that "Miller ma[de] no objection to [the magistrate judge's] analysis [on that issue] and . . . d[id] not argue that the shotgun was fruit of the warrantless entry." *Id.* at \*15 n.18.

### 3. *National Firearms Act*

Next, the district court rejected Miller's argument that the National Firearms Act is unconstitutional under the Second Amendment. The court explained that this argument was foreclosed by the Supreme Court's opinion in *United States v. Miller*, 307 U.S. 174 (1939).

### 4. *Sentencing*

After the district court denied Miller's motions, Miller entered a conditional guilty plea to the possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The presentence investigation report (PSR) identified Miller's base offense level as 22 because the offense involved a firearm as described in 26 U.S.C. § 5845(a) and because Miller committed the offense subsequent to sustaining a felony conviction for a controlled-substance offense. The PSR also recommended that the district court apply a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Miller possessed the shotgun in connection with the offense of assault by use or display of a dangerous weapon, in violation of Iowa Code § 708.2(3).

Miller objected to both of these PSR recommendations. First, Miller argued that the district court could not have found that he violated § 5845(a) because "there [was] no evidence that [he] knew that [the shotgun barrel] was less than 18 inches." Sent'g Tr. at 4, *United States v. Miller*, No. 6:19-cr-02031-LTS-MAR-1 (N.D. Iowa 2020),

-7-

ECF No. 95. The district court overruled Miller's objection, explaining that Miller had not presented "any authority suggesting [that the court] should go the other way," it was "undisputed that the barrel was shorter than 18 inches," and "there is not a knowledge requirement to apply the enhancement." *Id.* at 8. Additionally, it "was obviously a sawed-off shotgun"; "[i]t clearly had been altered by someone." *Id.* at 96–97.

Miller also argued that conspiracy to manufacture methamphetamine is not a controlled-substance offense. However, he raised the issue "purely for error preservation," acknowledging that there was contrary controlling Eighth Circuit precedent. *Id.* at 8. Thus, the sentencing court overruled Miller's objections and concluded that he had a base offense level of 22.

Lastly, Miller objected to the application of the four-level enhancement under § 2K2.1(b)(6)(B) that was based on the assertion that Miller possessed the firearm in connection with a felony offense. The felony offense was Iowa's aggravated misdemeanor of assault by use or display of a dangerous weapon. This offense carries a sentence that qualifies it as a felony under the Guidelines. *United States v. Anderson*, 339 F.3d 720, 724 (8th Cir. 2003).

Latham and Jarrell testified at the sentencing hearing. The court stated that "Latham was one of the worst witnesses [it had] ever seen" and "g[a]ve almost no weight to anything she said." Sent'g Tr. at 80. Although the court could not find "that . . . Miller actually pointed the firearm," it did find that the following facts were consistent with all of the witnesses' testimonies: (1) "[Miller] came outside and he did have a shotgun and it was an angry, hostile situation at that point"; (2) Latham "had been yelling," and there was "a loud noise" from Jarrell throwing Miller's suitcase into his truck; and (3) "Miller didn't [go] out[side] to make polite conversation." *Id.* at 80–81.

-8-

The court explained that it had "looked closely at Iowa Code 708.1 . . . and 708.2," which defines assault. *Id.* at 82. And it found by a preponderance of the evidence that Miller committed assault under both Iowa Code § 708.1(2)(b) and (c)[3] "by bringing this shotgun outside with him in a hostile and confrontational situation" and "displaying it in a manner where the other individuals were able to see that he had it." *Id.* Further, witnesses testified that they "felt threatened or concerned about the firearm." *Id.* at 82–83.

Thus, the court applied the four-level enhancement to the base offense level. After concluding that Miller was also entitled to a three-level decrease based on acceptance of responsibility, Miller's total offense level was 23. In conjunction with his criminal history category of V, the Guidelines recommended a sentence of 84 to 105 months' imprisonment. The court sentenced him to 84 months' imprisonment and 3 years' supervised release.

## II. *Discussion*

Miller urges us to hold that the shotgun must be suppressed, the National Firearms Act is unconstitutional, and the district court erred at sentencing. We affirm the district court on all accounts.

---

[3]Iowa Code § 708.1 defines assault accordingly:

A person commits an assault when, without justification, the person does any of the following: . . . .

b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

-9-

## A. *Motion to Suppress*

Miller seeks reversal of the district court's denial of his motion to suppress on two bases. First, he asserts that Officer Bovy omitted material information from the affidavit in support of the warrant to search Miller's residence in violation of *Franks*. Second, he contends that the shotgun must be suppressed because law enforcement entered Miller's home prior to obtaining a search warrant.

We review the denial of a motion to suppress de novo. *United States v. Mayweather*, 993 F.3d 1035, 1040 (8th Cir. 2021), *reh'g denied* (May 19, 2021). But the underlying factual determinations we review for clear error. *Id.*

> We may affirm on any grounds supported by the record and will do so unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.

*Id.* (cleaned up).

### 1. Franks *Issues*

Miller first argues that the affidavit supporting the warrant application to search his residence violated *Franks* by omitting material evidence.[4] He notes that Officer Bovy's affidavit (1) omitted evidence that contradicted Latham's statement that Miller

---

[4]After holding a hearing on all of Miller's motions, the magistrate judge "f[ou]nd that [Miller] failed to satisfy his burden to show he was entitled to a *Franks* hearing." *Miller I*, 2019 WL 8112464, at *13. Miller contends that because the magistrate judge *held* a *Franks* hearing, he was *entitled* to a *Franks* hearing. But whether Miller was entitled to the *hearing* is irrelevant because, ultimately, Miller is not entitled to *Franks* relief.

-10-

pointed a shotgun at her and Jarrell and (2) did not include information from Officer Bovy's encounters with Latham's daughter, the daughter's aunt, and Johnson.

To succeed on his *Franks* challenges, Miller "must show: '(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). Even assuming that Officer Bovy intentionally omitted this information from the affidavit, we affirm because Miller has not shown by a preponderance of the evidence that an affidavit including that information could not support a finding of probable cause. We review de novo whether the inclusion of the omitted information would not support a finding of probable cause. *See United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011).

"The Fourth Amendment requires probable cause to be shown for the issuance of a warrant." *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). "Only if the affidavit as supplemented by the omitted material could not have supported the existence of probable cause will suppression be warranted." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (cleaned up). "An affidavit establishes probable cause for a warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (quoting *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir. 2008)). Whether probable cause exists to issue a search warrant "is a 'commonsense, practical question' to be judged from the 'totality-of-the- circumstances.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). It "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (quoting *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001)).

-11-

Under Iowa law, it is illegal to "[i]ntentionally point[] any firearm toward another, or display[] in a threatening manner any dangerous weapon toward another." Iowa Code § 708.1(2)(c). Latham stated that Miller pointed a gun at her and Jarrell. In contrast, Borntreger stated that Miller did not point a gun at anyone because Miller did not see them. Miller, therefore, argues that Officer Bovy deliberately omitted Borntreger's contrary testimony from the affidavit, the exclusion of her testimony renders the affidavit misleading, and the inclusion of Borntreger's testimony would not have supported a finding of probable cause.

Miller further contends that "[a]ny information in the application for [the] warrant originating from Latham should be excised because the judge was not told about the many things that contradicted what she said." Appellant's Reply Br. at 14. Miller is wrong. The proper course is to consider the affidavit as if the omissions had been included, as the district court explained. *See Miller II*, 2019 WL 7212306, at *13 ("Even if I found the discrepancies in the witness statements were intentionally omitted or omitted with reckless disregard for the truth, this would not require excising Latham's claims to determine whether the omissions impacted the probable cause analysis as Miller argues. Rather, I must consider whether the affidavit was supported by probable cause if the omitted information *had been included*."); *see also Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000) ("[A] reconstructed affidavit must also include material allegedly omitted with reckless disregard for the truth.").

Like the district court, we conclude that if the "full extent of statements from Latham, Borntreger, [Chelsea,] and [Jarrell] had been included in the affidavit, . . . such information would [not] render the affidavit unsupported by probable cause." *Miller II*, 2019 WL 7212306, at *13.

As the district court explained, "the issuing judge would still have had testimony from multiple eyewitnesses that [Miller] was angry and cursing while carrying a shotgun." *Miller I*, 2019 WL 8112464, at *12. Latham, Jarrell, Chelsea—and even

-12-

Borntreger—all testified that Miller was cursing in a dispute with Latham while carrying a shotgun. Latham, the alleged victim, stated that Miller pointed a gun at her and Jarrell. And Jarrell confirmed that Miller "'pointed' the shotgun." *Miller II*, 2019 WL 7212306, at *4. Though Chelsea did not corroborate their stories, she also did not contradict them.

And even though Borntreger stated that Miller had not pointed a gun at Latham and Jarrell, "what she saw was at least consistent with displaying a firearm in a threatening manner," which is also criminalized under Iowa law. *Miller I*, 2019 WL 8112464, at *10 (citing Iowa Code § 708.1(2)(c)). In fact, "Borntreger . . . described [Miller] as carrying the shotgun in a manner that would allow him to shoot quickly if necessary." *Id.* at *6. As the district court emphasized, "Probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *Miller II*, 2019 WL 7212306, at *14 (quoting *Donnelly*, 475 F.3d at 954).

Notably, "[a]ll witnesses described being outside and, at some point, going inside Latham's apartment after Miller exited his apartment." *Id.* at *13. They also all "had similar descriptions of the gun, the people involved and the general chain of events." *Id.*

Therefore, Miller is not entitled to suppression of the shotgun under *Franks*.

## 2. *Warrantless Entry*

Miller argues that the district court erred by concluding that law enforcement's warrantless entry into his residence was justified by exigent circumstances. Without deciding whether exigent circumstances justified the warrantless entry, we affirm the district court because the illegality was not the but-for cause of obtaining the evidence.

-13-

"Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). Evidence that was "obtained as a direct result of an illegal search or seizure" should be excluded, as well as "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Id.* (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

But "the 'illegality [must] at least [be] a but-for cause of obtaining the evidence.'" *Id.* at 1079 (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)). "[T]he initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence" is on the defendant. *Id.* (citation omitted). Then, "[o]nce the defendant comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government." *Id.*; *see also Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (en banc) ("[U]nder the 'independent source' doctrine, the challenged evidence will be admissible if the prosecution can show that it derived from a lawful source independent of the illegal conduct. In such a case, there is no reason to exclude the challenged evidence since the police misconduct is not even a 'but for' cause of its discovery." (citation omitted)).

Here, the shotgun was not obtained as a result of an illegal entry. Assuming the officers entered illegally, they did not discover the shotgun until they obtained a search warrant. And the warrant application did not include any information gained as a result of the assumed illegal entry. *Cf. Segura*, 468 U.S. at 814 (holding that suppression was not required when officers illegally entered a residence because the officers did not use any information obtained from the illegal entry to secure a warrant). Moreover, Miller did not meet his burden of "establishing the factual nexus between the constitutional violation and the challenged evidence." *Riesselman*, 646 F.3d at 1079. As the district

-14-

court noted, Miller "d[id] not argue that the shotgun was fruit of the warrantless entry." *Miller II*, 2019 WL 7212306, at *15 n.18. On appeal, Miller states that "the fruit of the *Franks* violation includes the shotgun and other evidence seized." Appellant's Br. at 36. But Miller fails to elaborate and, thus, fails to meet his burden.

## B. *National Firearms Act*

Miller argues that the National Firearms Act is unconstitutional. At the same time, he acknowledges that the Supreme Court has rejected this argument, *see Miller*, 307 U.S. at 177–78, and thus merely seeks "to preserve the issue," Appellant's Br. at 37.

## C. *Sentencing*

As to his sentencing, Miller argues that the district court erred in three ways: (1) it found that Miller had a prior conviction for a controlled substance under U.S.S.G. § 4B1.2(b); (2) it found that the offense involved a firearm that is described in 26 U.S.C. § 5845(a); and (3) it applied a four-level sentencing enhancement based on Miller using a firearm in connection with another felony offense.

"This court reviews sentencing determinations under a deferential abuse of discretion standard, first ensuring that the district court committed no significant procedural error." *United States v. Wood*, 587 F.3d 882, 883 (8th Cir. 2009). "'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

In determining whether there was a procedural error, "we review the district court's factual findings for clear error and its application or interpretation of the

Appellate Case: 20-2857     Page: 15     Date Filed: 09/03/2021 Entry ID: 5072806

Guidelines de novo." *United States v. Belfrey*, 928 F.3d 746, 750 (8th Cir. 2019). "A finding is 'clearly erroneous' when, after reviewing the entire evidence, the court is left with the firm conviction that a mistake has been made." *United States v. Thomas*, 565 F.3d 438, 441 (8th Cir. 2009) (quoting *United States v. Marks*, 328 F.3d 1015, 1017 (8th Cir. 2003)).

As relevant here, the United States Sentencing Guidelines instruct courts to apply a base offense level of 22 "if . . . the offense involved a . . . firearm that is described in 26 U.S.C. § 5845(a)[,] and . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled[-] substance offense." U.S.S.G. § 2K2.1(a)(3). And a defendant's sentence will receive a four-level increase if he "used or possessed any firearm or ammunition in connection with another felony offense." *Id.* § 2K2.1(b)(6)(B).

### 1. *Prior Conviction for a Controlled Substance*

Miller argues that the district court erred by finding that he committed the instant offense after sustaining a felony conviction for a controlled-substance offense. He avers that a controlled-substance offense does not include inchoate offenses. But Miller admits that he is making this argument in order "to preserve it in the event the Supreme Court favorably resolves the Circuit split." Appellant's Br. at 48. Indeed, "[t]his argument is foreclosed by *United States v. Mendoza-Figueroa*, 65 F.3d 691 (8th Cir. 1995) (en banc)." *United States v. Merritt*, 934 F.3d 809, 811 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 981 (2020). And "[o]ur panel may not overrule a decision of the en banc court." *Id.*

### 2. *Shotgun Barrel Length*

Next, Miller argues that the sentencing court erred by concluding that the offense involved a firearm that is described in 26 U.S.C. § 5845(a). Specifically, the district court found that the firearm was "a shotgun having a barrel or barrels of less than 18 inches in length," as defined in § 5845(a). *Miller I*, 2019 WL 8112464, at *18. Though

-16-

Miller concedes that the shotgun has a barrel of less than 18 inches, he argues that he did not *know* that the barrel was less than 18 inches.

However, the Guidelines do not require "knowledge" for this enhancement to apply. *See* U.S.S.G. § 2K2.1(a)(3). Though we have yet to consider this precise argument,[5] we have stated that "[t]he Sentencing Commission understands the difference between actus reas and mens rea and specifically includes a scienter element within a guideline when it intends mens rea to be considered." *United States v. Gonzalez-Lopez*, 335 F.3d 793, 798 (8th Cir. 2003). We "have refused to read scienter elements into guidelines where the Sentencing Commission has not provided them." *Id.* Thus, we decline to read "knowledge" as an element into § 2K2.1(a)(3) of the Guidelines where the Sentencing Commission has not included it.

We have rejected a similar argument. *See United States v. Amerson-Bey*, 898 F.2d 681, 683 (8th Cir. 1990) (holding that the enhancement for illegal possession of a stolen firearm "does not require knowledge that the firearm was stolen"). And several

---

[5]In *United States v. Rohwedder*, a district court enhanced a defendant's sentence pursuant to § 2K2.1(b)(3) because the offense involved a firearm as defined in 26 U.S.C. § 5845(a). 243 F.3d 423, 425 (8th Cir. 2001). The defendant argued that the court erroneously applied the enhancement because "he did not know that the shotgun was shortened." *Id.* We noted "that to convict a defendant for possessing a firearm as defined in § 5845(a), the government 'must prove that the defendant knew of the features of the weapon that brought it within the scope of' unlawful possession, in particular, of a reduction in barrel and overall length." *Id.* at 426 (quoting *United States v. Otto*, 64 F.3d 367, 370 (8th Cir. 1995)). We assumed that the same knowledge requirement applied to sentencing enhancements under § 2K2.1(b)(3), *cf. id.* at 426 n.2, and "f[ou]nd no clear error in the district court's conclusion that [the defendant] knew that the shotgun had been shortened." *Id.* at 426. In so holding, we did "not squarely address[]" whether § 2K2.1(b)(3) actually required a mens rea finding, so "we are not bound by . . . *stare decisis*" from concluding that knowledge is not an element of § 2K2.1(a)(3). *Passmore v. Asture*, 533 F.3d 658, 660 (8th Cir. 2008).

-17-

of our sister courts have addressed the issue and rejected Miller's argument. *See, e.g.*, *United States v. Fry*, 51 F.3d 543, 546 (5th Cir. 1995) ("[T]he language of [§] 2K2.1(a)(3) makes no reference to the defendant's mental state. The section is plain on its face and should not, in light of the apparent intent of the drafters, be read to imply a scienter requirement."); *United States v. Williams*, 828 F. App'x 209, 210 (5th Cir. 2020) (unpublished per curiam) ("Although § 2K2.1(a)(3) has been amended since *Fry*, nothing in the text or commentary of § 2K2.1(a)(3) imposes a *mens rea* requirement."); *United States v. Bryant*, 131 F.3d 136, 136 (4th Cir. 1997) (unpublished per curiam) (agreeing with the Fifth Circuit's holding in *Fry* that § 2K2.1(a)(3) does not imply a scienter requirement); *United States v. Saavedra*, 523 F.3d 1287, 1289 (10th Cir. 2008) (rejecting the defendant's argument that the § 2K2.1(a)(5) sentencing enhancement did not apply because the government did not prove that the defendant knew that he possessed a firearm as described in 26 U.S.C. § 5845(a)).

Miller cites *Staples v. United States*, 511 U.S. 600 (1994), and *Rehaif v. United States*, 139 S. Ct. 2191 (2019), for support. However, those cases are inapposite because they explain that knowledge is a necessary element for certain *convictions*. They do not discuss a *sentencing enhancement*. *See Bryant*, 131 F.3d at 136 (explaining that the defendant's reliance on *Staples* for imposing a scienter element to § 2K2.1(a)(3) was "misplaced" because "the statute in *Staples* was a criminal statute, while the provision at issue in this case is a sentencing enhancement without the same risk of conviction of an innocent party").

Because the gun was in fact less than 18 inches (17 7/8ths inches), the district court did not err. And even if knowledge was needed, the district court concluded that

> this was not a situation where [the shotgun] was barely under 18 inches and something that came out of a factory in that format. *It clearly had been altered by someone.* I don't know if it was Mr. Miller, and it doesn't

-18-

matter if it was him. But he was in possession of a firearm that *clearly* had been modified to reduce the barrel length.

Sent'g Tr. at 97 (emphases added).

### 3. *Possessing a Firearm in Connection with Another Felony Offense*

Last, Miller argues that the district court erred in finding that he committed assault; therefore, it erroneously applied the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). "When the proposed enhancement is based upon an offense for which there was no prior conviction[,] the government must prove at sentencing (by a preponderance of the evidence) that the defendant committed it." *Thomas*, 565 F.3d at 441 (cleaned up). "A district court's finding regarding a defendant's purpose in possessing a firearm is a finding of fact," which we review for clear error. *Id.* (quoting *United States v. Harper*, 466 F.3d 634, 649 (8th Cir. 2006)).

Iowa Code § 708.1(2) provides four definitions of assault. Per § 708.1(2)(b), "[a] person commits an assault when, without justification, the person does . . . [a]ny act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act." Under § 708.1(2)(c), "[a] person commits an assault when, without justification, the person . . . [i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another."

After hearing several witnesses testify, the district court found by a preponderance of the evidence that Miller committed assault under both definitions when he "brought a shotgun outside with him in the middle of a hostile, angry, confrontational situation" and "display[ed] it in a manner where the other individuals were able to see that he had it." Sent'g Tr. at 81–82.

-19-

Miller argues that the district court misunderstood Iowa assault law and read the "toward another" element out of the statute. We disagree. The district court stated, "I've looked closely at Iowa Code 708.1 . . . and 708.2" and emphasized that witnesses testified that "they were concerned" and "felt threatened." *Id.* at 82. The record does not support a conclusion that the district court misinterpreted Iowa law.

Miller cites *State v. Mott*, No. 00-575, 2001 WL 433395 (Iowa Ct. App. Apr. 27, 2001) (unpublished). In *Mott*, the defendant challenged the sufficiency of the evidence for his conviction for assault under § 708.1. *Id.* at *1. The court concluded that there was sufficient evidence to support the assault conviction when the defendant entered an office angrily, demanding to know his girlfriend's location. *Id.* at *2. The assault victim was in the office and denied knowing the whereabouts of the girlfriend. *Id.* The defendant had a knife in his hand and stabbed a calculator with it. *Id.* He also stabbed a desk, though it was not the desk where the victim was sitting. *Id.* The defendant's actions scared the victim, and "[t]he fact that he did not touch [the victim] with the weapon or hold it directly to him [wa]s not dispositive." *Id.*

*Mott* supports our decision.[6] As in *Mott*, Miller did not have to point the shotgun directly at anyone. Contrary to Miller's assertion, the district court did not find that "by simply carrying the gun without pointing it at anyone Miller committed [assault]." Appellant's Br. at 44. Rather, the court found that Miller brought the shotgun into a heated situation and clearly displayed it and the victims felt threatened. Even though

---

[6]*See also Thomas*, 565 F.3d at 440, 442 (concluding that the defendant committed assault under Iowa law by a preponderance of the evidence by intentionally displaying a dangerous weapon in a threatening manner when the defendant entered an apartment "with a gun 'in his right hand'" that he "held . . . 'straight down at his side'" but "with his hand near the trigger"); *Anderson*, 339 F.3d at 722, 724–725 (holding that there was sufficient evidence that the defendant displayed a firearm in a threatening manner in violation of Iowa law based on testimony that he was walking along the shoulder of an interstate "waving the gun").

-20-

the witnesses' testimonies were not consistent as to whether Miller pointed the gun at any individuals, they were consistent as to Miller holding the gun in a position ready to shoot. Furthermore, *Mott* required proof of assault beyond a reasonable doubt, as it involved a conviction. Here, proof of assault only by a preponderance is required, as it involves a sentencing enhancement.

### III. *Conclusion*

For the foregoing reasons, we affirm.

_____

-21-